UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARY FENLON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 4:15-CV-00185(JCH) |
|  | ) |  |
| PAULA BURCH, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Paula Burch's Motion for Leave to Amend Notice of Removal, (ECF No. 11), and Plaintiff Mary Fenlon's Motion to Remand. (ECF No. 8). Both motions are ready for disposition.

## BACKGROUND

Fenlon initiated this action on December 26, 2014 by filing a Petition in the Circuit Court of St. Louis County, Missouri. (Removal Notice, ECF No. 1, ¶ 1). According to the Petition, Fenlon was employed by Clearent, LLC ("Clearent") at all times relevant to this case. (Petition, ECF No. 4, ¶ 1). Burch was employed by Clearent in a supervisory capacity during the same time. *Id.* ¶¶ 2, 3. Sometime in 2014, Fenlon noticed that Burch and several of the employees she supervised were "being paid full time but only working part-time." *Id.* ¶¶ 5, 12, 13. After discovering this information, Fenlon "reported the situation to upper management." *Id.* ¶ 11. "Upon learning of plaintiff's disclosure, defendant Burch developed a scheme, plan and design to interfere with plaintiff's employment with Clearent by attempting to get her fired." *Id.* ¶ 15. Fenlon claims that Burch's actions amounted to intentional interference with the employment

1

contract between Fenlon and Clearent. *Id.* ¶ 19. Fenlon seeks damages, including lost wages, based on that claim. *Id.* ¶ 21.

Burch timely removed the matter to this Court on January 26, 2015 on the basis of diversity jurisdiction. (Removal Notice ¶ 5). The removal notice states that Fenlon "is a citizen of the State of Missouri. Defendant Burch is a resident of the State of Illinois." *Id.* ¶ 6. It also states that the amount in controversy exceeds $75,000 based on Fenlon's $90,000 annual salary "plus stock options, additional benefits, and a year-end bonus." *Id.* ¶ 9. Fenlon seeks to have the matter remanded to the St. Louis County Circuit Court.

## DISCUSSION

1. *Motion for Leave to Amend Notice of Removal*

The first basis on which Fenlon seeks remand is Burch's statement in her removal notice that Burch is a "resident" of Illinois. (Remand Support Memo, ECF No. 9, at 3-4). Fenlon contends, correctly, that an allegation of "residency" is irrelevant to the establishment of diversity of citizenship because the focus of the inquiry is the "citizenship" of each party. *Id.* at 4. Burch responds that this characterization "was an inadvertent oversight. Defendant Burch currently lives in the State of Illinois, has lived in Illinois her entire life, and intends to continue living in Illinois for the foreseeable future." (Motion to Amend ¶ 3). Burch supports this assertion with an affidavit, (Burch Affidavit, ECF No. 11-1), and Fenlon has not contested it. To avoid remand, Burch seeks leave to amend her removal notice.

"Allegations of jurisdiction which are defective should be discovered and corrected in the District Court." *Texaco-Cities Serv. Pipe Line Co. v Aetna Cas. & Sur. Co.*, 283 F.2d 144, 145 (8th Cir. 1960) (*per curiam*). One statutory avenue for such a correction is 28 U.S.C. § 1653, under which "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or

2

appellate courts." *Id.* Based on § 1653, the Eighth Circuit recently allowed amendment on appeal of a removal notice that initially alleged only the residency of the plaintiff after evidence was offered to show the plaintiff's citizenship at the time of filing and removal. *Reece v. Bank of New York Mellon*, 760 F.3d 771, 776-78 (8th Cir. 2014).

Amendment is a better approach than remand here. Burch has provided uncontested information to demonstrate that she simply made an error in characterizing herself as a resident of Illinois. She has corrected that error in her amended removal notice, which she attached to her motion for leave to amend. The Court therefore will allow Burch to file her amended removal notice, and there is no deficiency in her allegation of diversity on which to justify remand.

2. *Motion to Remand*

Still remaining as a potential basis for remand is Fenlon's contention that the amount in controversy does not exceed $75,000. (Remand Support Memo at 4-7). Fenlon asserts that to determine the amount in controversy, her damages for lost wages should be measured from the date of her termination, December 22, 2014, to the time of removal, January 26, 2015. *Id.* at 6. Based on her $90,000 annual salary, her damages would therefore amount to $8,653.85 for lost wages and an additional $2,000 in lost benefits. *Id.* To factor in any wages not yet accrued would be to engage in undue speculation. *Id.* at 6-7. In her Reply, Fenlon also seems to suggest that this amount will be reduced by wages she earned in a part-time job. (Fenlon Reply, ECF No. 13, at 2-3). Fenlon asserts that "[s]he has worked 30-40 hours per week in her field as an accountant in the first two weeks in February, 2015. She does not know how long that will continue." *Id.*

Burch responds that, contrary to Fenlon's contention, calculation of the amount in controversy based on damages for lost wages should take into account the time between the date of termination and the anticipated date of trial. (Burch Response, ECF No. 12, at 3). Because a

3

trial likely would not occur until at least one year after the date of her termination, Fenlon's $90,000 annual salary means her damages for lost wages alone will exceed $75,000. *Id.* at 4. Moreover, while Fenlon claims "her damages would be reduced by the amount she has earned through part-time employment, . . . her affidavit is silent with regard to the amount of money she has actually earned through her part-time employment." *Id.*

A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have original jurisdiction over matters in which plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000. When seeking removal on this basis, the defendant must make a "short and plain statement" of the grounds for diversity jurisdiction. *See* 28 U.S.C. § 1446(a). District courts should accept the defendant's statement "when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014). But a district court must make findings of jurisdictional fact when the defendant's allegations are contested or questioned. *Id.* at 553-54. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (rule based on 28 U.S.C. § 1446(c)(2)(B)). If the amount is not demonstrated by a preponderance of the evidence, the case must be remanded to the state court in which it was filed. 28 U.S.C. § 1447(c).

"It is axiomatic the court's jurisdiction is measured either at the time the action is commenced, or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). Applying this principle, several district courts have limited the calculation period for a lost wages claim to the date of removal. *E.g.*, *Beck v. Consol Energy, Inc.*, 2014 WL 2862996, at *2 (N.D. W. Va. June 24, 2014); *Fortescue v. Ecolab, Inc.*,

4

2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014). Others have calculated the amount through a hypothetical trial date. *Cordell v. W.W. Williams Co.*, 16 F. Supp. 3d 1351, 1353-59 (N.D. Ala. 2014); *White v. Loomis Armored US, Inc.*, 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010). Burch has cited a case from this district that arguably implies approval of the latter approach. (Fenlon Response at 4 (citing *Logan v. Value city Dept. Stores, LLC*, 2008 WL 1914168, at *3 (E.D. Mo. April 28, 2008) ("Therefore, plaintiff's claim for back pay is worth $20,000 at this point. If plaintiff were out of work for another year before the case is resolved, the back pay claim would be worth $40,000, an amount still far below the jurisdictional minimum.")).

The latter approach also accords with relevant Eighth Circuit authority. In *Shaw v. Gwatney*, 795 F.2d 1351 (8th Cir. 1986), the Eighth Circuit ruled on a dispute over whether a plaintiff's complaint crossed the jurisdictional threshold under the Tucker Act. *Id.* at 1352. In concluding that the threshold had been crossed, the Eighth Circuit expressly rejected an argument that was based on the assumption "that the amount of the claim asserted is equal to the amount of the damages accrued" at the time filing. *Id.* at 1354. The better rule is that the claim amount at filing depends "on the amount the plaintiff is entitled to recover through the single suit." *Id.* In support of its reasoning, the court cited *Weinberger v. Wiesenfeld*, 420 U.S. 636, 642 n. 10 (1975), in which the Supreme Court "stated in a footnote that future social security benefits to which a plaintiff would be entitled upon a favorable judgment were to be considered in determining whether the $10,000 minimum then applicable to federal question jurisdiction had been met." *Id.* at 1355. It also cited a case in which the Fourth Circuit "held diversity jurisdiction proper when a buyer's expenses in caring for a lame horse pending rescission of the purchase would accrue to more than $10,000 before the court could rule on a motion to dismiss, even though damages were less than $10,000 when the complaint was filed." *Id.* (citing *Broglie v.*

*MacKay-Smith*, 541 F.2d 453 (4th Cir. 1976)). The broad language used in *Shaw*, as well as its reliance on a diversity case, suggests the court's reasoning on the timing issue extends to the determination of jurisdictional amounts in the diversity context.

Moreover, measuring lost wages through the time of trial better comports with common sense. Absent an express limitation of damages, it is likely that a plaintiff will seek to recover at trial all of the damages then available to her. This amount will not be relevant only at trial. It will loom in the background and shape the interactions between the parties throughout the pre-trial period, especially during settlement negotiations. It therefore would be difficult to conclude that an amount to which a plaintiff will be entitled at trial is not "in controversy" as soon as the plaintiff files suit and, subsequently, at the time of removal.[1] Thus, based on authority and common sense, it is appropriate to factor into an amount-in-controversy calculation the amount of lost wages that will accrue through trial, provided that the plaintiff would be entitled to that amount if successful and there is adequate evidence from which to determine the amount.

The parties agree that Fenlon's annual salary was $90,000 at the time of her termination. While Fenlon has suggested that any claim for lost wages would be reduced by work she performed after termination, she has not provided any amount to aid calculation of that reduction. Fenlon also seems to suggest that the work performed was temporary and unlikely to continue. In short, the evidence offered by the parties is that Fenlon is entitled to at least $90,000 per year. The date of trial will be at least one year from the date of Fenlon's termination, and Fenlon will be entitled to lost wages through the time of trial if her claim is successful. *See, e.g.*, *Shannon v. Welch*, 858 S.W.2d 748, 753 (Mo. Ct. App. 1993) ("Generally, damages resulting directly from the defendant's wrongful act are recoverable by plaintiff"); *Naeger v. Naeger*, 339

---

[1] Indeed, Fenlon's Petition belies her contention that she has made a sufficiently definite claim for only $10,653.85, since she prays in the Petition for "an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000)." (Petition ¶ 17 (emphasis in original)).

S.W.2d 492, 498 (Mo. Ct. App. 1960) ("If . . . the loss had been wages, certainly defendant would not contend the lost wages were not recoverable."). Therefore, Burch has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Paula Burch's Motion for Leave to Amend Notice of Removal, (ECF No. 11), is **GRANTED**, and Burch must file her amended removal notice within 7 days of this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff Mary Fenlon's Motion to Remand, (ECF No. 8), is **DENIED**.

**IT IS FURTHER ORDERED** that Fenlon's Motion to Stay, (ECF No. 10), is **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that Fenlon will have 14 days from the entry of this Memorandum and Order to respond to Burch's Motion to Compel Arbitration or, in the Alternative, to Dismiss. (ECF No. 6). Burch will then have 7 days from the filing of any response to file a reply.

Dated this 4th day of March, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE